## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

GORDON PARKER GOODFELLOW:
IV, a minor by GORDON PARKER
GOODFELLOW, III and LORENA :
GOODFELLOW, Parents and
Natural Guardians, and GORDON : CIVIL ACTION NO. 3:16-1521
PARKER GOODFELLOW, III and
LORENA GOODFELLOW, : (JUDGE MANNION)
Individually,
:
      **Plaintiffs**
:
      **v** :

CAMP NETIMUS, INC., d/b/a
CAMP SHOHOLA FOR BOYS, INC. :
a/k/a CAMP SHOHOLA, INC.;
CANDACE KAY LEHMAN and :
LISA M. CHOU (BRASS),
:
      **Defendants**

## MEMORANDUM

Pending before the court is the motion to dismiss, (Doc. 12), of the defendants regarding plaintiffs' direct medical corporate negligence claims raised against Camp Netimus, Inc., d/b/a Camp Shohola for Boys, Inc. ("the Camp") in the amended complaint, (Doc. 10), based on an alleged defective Certificate of Merit ("COM") which allegedly fails to set forth that plaintiffs are proceeding on such a theory against the Camp. The defendants also seek to dismiss the allegations of negligence against the individual defendants as well as all allegations of recklessness. Further, the defendants move to dismiss the parent plaintiffs' loss of consortium claim regarding their minor son. For the reasons discussed below, the defendants' motion will be **GRANTED IN**

**PART AND DENIED IN PART**.

## I.    PROCEDURAL AND FACTUAL BACKGROUND[1]

The plaintiffs, Gordon Parker Goodfellow, III, and Lorena Goodfellow bring this action on behalf of their minor son, Gordon Parker Goodfellow, IV ("GPG"), and on their own behalf. The plaintiffs filed their complaint on July 22, 2016, (Doc. 1), against defendants the Camp, and the two Camp infirmary nurses, Candace Kay Lehman and Lisa M. Chou. After defendants were served, they filed a motion to dismiss the complaint on September 23, 2016. (Doc. 9). On September 30, 2016, plaintiffs filed an amended complaint. (Doc. 10). There was only one difference between the amended complaint and the original complaint, namely, ¶ 17.1 which stated that counsel erred in checking the wrong box on the original COM for the Camp and that plaintiffs had secured an expert who gave an opinion regarding the negligence of the Camp. Attached to the amended pleading were amended COMs regarding all three defendants. (Doc. 10, pp. 24-30). The amended COM for the Camp had the box for vicarious liability checked. (Doc. 10, pp. 24-25). The court then dismissed the motion to dismiss the original complaint since it was moot. (Doc. 11).

---

[1]All facts are taken from plaintiffs' amended complaint, (Doc. 10), unless otherwise noted. The facts alleged in plaintiffs' amended complaint must be accepted as true in considering the Camp's motion to dismiss. *See* Dieffenbach v. Dept. of Revenue, 490 Fed.Appx. 433, 435 (3d Cir. 2012); Evancho v. Evans, 423 F.3d 347, 350 (3d Cir. 2005).

On October 19, 2016, the defendants filed a motion to dismiss portions of the amended complaint pursuant to Fed.R.Civ.P. 12(b)(6). (Doc. 12). The defendants simultaneously filed their brief in support. (Doc. 13). On November 2, 2016, the plaintiffs filed their brief in opposition. (Doc. 16). The defendants filed a reply brief on November 9, 2016, rendering their motion to dismiss ripe for review. (Doc. 17).

This action relates to the medical treatment GPG received while attending the Camp, as an overnight camper, during the summer of 2014. GPG became sick on July 26, 2014 and was brought to the Camp's infirmary complaining about stomach pain, nausea, vomiting and a fever. The Camp's infirmary was staffed by Lehman and Chou, both licensed professionals, who believed GPG was suffering from a stomach flu. GPG remained in the Camp's infirmary from July 26 through July 29, 2014, allegedly without proper medical care. On July 29, 2014, the Camp Director brought GPG to Hawley Urgent Care where he was immediately referred to Wayne Memorial Hospital Emergency Room for a CT scan. The scan revealed that GPG had a perforated appendix which caused sepsis. GPG was then transported to Geisinger Medical Center where he received IV antibiotics to address the infection. GPG remained at Geisinger receiving antibiotics until September 24, 2014, when he was stable enough to have surgery to remove his appendix. GPG was discharged from Geisinger on September 26, 2014. For one month thereafter, GPG allegedly still had pain in his lower abdomen.

In their amended complaint, (Doc. 10), the plaintiffs allege that Lehman

and Chou were negligent for initially misdiagnosing GPG with a stomach flu, for failing to timely diagnose his condition which was appendicitis, and for failing to supervise and train Camp employees. In addition to the direct professional negligence claims against Lehman and Chou, the plaintiffs claim that the Camp is vicariously liable for the alleged negligence of the two infirmary nurses. The plaintiffs also assert claims of direct and corporate negligence against the Camp, including claims that it failed to adequately train the infirmary staff, it failed to have adequate policies and procedures in place, and it failed to consult with a physician.

There are five counts in the amended complaint, to wit: (I) a professional medical negligence claim against Lehman; (II) a professional medical negligence claim against Chou; (III) claims of vicarious liability as well as direct corporate medical negligence claims against the Camp; (IV) a claim for emotional distress allegedly suffered by GPG against all defendants; and (V) a claim by GPG's parents against all defendants for recovery of medical bills and a loss of consortium claim by GPG's parents regarding GPG. There are also several allegations of recklessness against the defendants in the amended complaint. As relief in all five counts, plaintiffs seek compensatory damages. This court's jurisdiction is based on diversity 28 U.S.C. §1332.

As indicated, the plaintiffs attached amended COMs to their amended complaint regarding all three defendants. (Doc. 10, pp. 24-30). The amended COMs against Lehman and Chou were filed based on Pa.R.C.P. 1042.3(a)(1) and state, in pertinent part, an expert has found that "there is a basis to

4

conclude that the care, skill or knowledge exercised or exhibited by this defendant in the treatment, practice or work [at issue], fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm [to GPG]." The amended COM filed against the Camp, which is based only on Pa.R.C.P. 1042.3(a)(2), states that "the claim that this defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals [i.e.,Lehman and Chou] for whom this defendant is responsible deviated from an acceptable professional standard" and, that an expert has found "there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work [at issue], fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm [to GPG]."

## II.   STANDARDS OF REVIEW

### A. Motion to Dismiss

The defendants' motion to dismiss is brought pursuant to the provisions of Fed.R.Civ.P. 12(b)(6). This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the

complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007) (abrogating "no set of facts" language found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. 544, 127 S. Ct. at 1965. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action. Id. Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (*quoting* Twombly, 550 U.S. 544, 127 S. Ct. at 1964-65).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *See* Sands v. McCormick, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not

physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on other parts of the record in determining a motion to dismiss. *See* Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

Generally, the court should grant leave to amend a complaint before dismissing it as merely deficient. *See, e.g.*, Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." Alston v. Parker, 363 F.3d 229, 236 (3d Cir. 2004).

### B. Motion to Strike

Defendants' motion, insofar as it seeks to strike portions of the amended complaint, is also made pursuant to Fed.R.Civ.P. 12(f). In Tennis v. Ford Motor Co., 730 F.Supp.2d 437, 443 (W.D.Pa. 2010), the court explained as follows regarding a Rule 12(f) motion:

> Under Fed.R.Civ.P. 12(f) "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Rule 12(f) "permits the court, on its own motion, or on the timely motion of a party, to order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Adams v. Cnty. of Erie, Pa., 2009 WL 4016636 at *1 (W.D.Pa. Nov. 19, 2009) quoting Fed.R.Civ.P. 12(f)). "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid

unnecessary forays into immaterial matters." Natale v. Winthrop Resources Corp., 2008 WL 2758238 at *14 (E.D.Pa. July 9, 2008) (quoting McInerney v. Moyer Lumber & Hardware, Inc., 244 F.Supp.2d 393, 402 (E.D.Pa. 2002)).

Although courts possess "considerable discretion in disposing of a motion to strike under Rule 12(f), 'such motions are not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case.'" Thornton v. UL Enterprises, LLC, 2010 WL 1005021 at *2 (W.D.Pa. March 16, 2010) (internal citations omitted). "Striking some or all of a pleading is therefore considered a drastic remedy to be resorted to only when required for the purposes of justice." Thornton, 2010 WL 1005021 at *2 (quoting DeLa Cruz v. Piccari Press, 521 F.Supp.2d 424, 428 (E.D.Pa. 2007) (quotations omitted)).

## III.  DISCUSSION

In their motion, defendants argue that the amended COM filed against the Camp supports only claims of vicarious liability with respect to the alleged negligence of Lehman and Chou and is thus insufficient to support direct claims of corporate negligence. Defendants also argue that plaintiffs' corporate negligence claims against the Camp should be dismissed for failure to state a cause of action and, that the vague allegations of negligence in the amended complaint should be stricken against all defendants. Further, defendants argue that all of the allegations of recklessness should be stricken from the amended complaint. Finally, defendants assert that the parent plaintiffs' cause of action for loss of consortium regarding GPG should be dismissed for failure to state a cognizable claim.

Plaintiffs initially contend that defendants' motion to dismiss with respect to their direct corporate negligence claims against the Camp is untimely. Plaintiffs cite to Pa.R.C.P. 1042.6 and 1042.7 and, point out that a defendant claiming a defective COM is required to file a notice of intent to enter a judgment of *non pros*, i.e., a motion to dismiss with respect to this case, "no sooner than the thirty-first day after the filing of the complaint." Plaintiffs filed their original complaint on July 22, 2016, and served it on defendants along with waivers and Summons on July 26, 2016. Defendants signed the waivers which provided that they had 60 days to respond to plaintiffs' complaint from July 26, 2016, i.e., by September 24, 2016. (Doc. 4, Doc. 8). On September 23, 2016, the defendants jointly filed their motion to dismiss with respect to the original complaint, which argued, in part, that the COM regarding the Camp was defective. (Doc. 9). Specifically, the COM regarding the Camp which was attached to the original compliant, (Doc. 1, p. 29), had only the third box checked which provided that "expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this defendant" based on Pa.R.C.P. 1042.3(a)(3). Defendants' motion was timely since it was filed one day before the expiration of the 60-day period. In response to the motion to dismiss, plaintiffs filed their amended complaint on September 30, 2016. Since the 60-day period expired on September 24, 2016 and there was only one day remaining on it, defendants had 14 days to respond to plaintiffs' amended complaint. *See* Fed.R.Civ.P. 15(a)(3).

On October 19, 2016, the defendants filed their motion to dismiss the amended pleading, including the direct corporate negligence claims against the Camp again based on a defective COM. However, defendants' motion was due on October 14, 2016, i.e., 14 days after September 30, 2016 and, thus, it was filed five days late. Defendants did not file a motion for an extension of time to file their motion. Nor did they file a motion with the court seeking to file their motion to dismiss *nunc pro tunc*. As such, plaintiffs argue that defendants' motion to dismiss their amended complaint should be dismissed in its entirety since it was filed out of time.

Defendants do not concede that their instant motion was untimely. Nor do they claim that it was timely. Rather, defendants contend that the court should still determine the merits of their motion even if it is untimely since "plaintiffs are not prejudiced in any manner whatsoever." (Doc. 17, p. 2). Defendants point out that their instant motion to dismiss is nearly identical to their prior motion to dismiss plaintiffs' original complaint and that plaintiffs had notice of their intent to challenge some of the amended pleading before it was even filed. Thus, defendants state that dismissal of their instant motion is too drastic a sanction since any short delay did not cause plaintiffs any prejudice.

Defendants' motion was a few days late. However, the court, in its discretion, will not strike the motion as untimely since plaintiffs had actual prior notice of the essential grounds for the motion and there is simply no prejudice to plaintiffs by the short delay. There is also no prejudice to plaintiffs

since many of defendants' present arguments could be re-asserted in a later summary judgment motion. Moreover, if defendants had requested an extension of time or requested to file their motion *nunc pro tunc*, the court certainly would have granted it. Thus, striking defendants' motion under the present circumstances would be too drastic a sanction, and the court will consider the merits of defendants' motion to dismiss. However, counsel is reminded to adhere to the Federal Rules of Civil Procedure and the rules of this court in the future.

Next, plaintiffs argue that defendants' attempt to dismiss their claims of direct corporate medical negligence against the Camp based on an alleged defective COM should be asserted in a summary judgment motion and that defendants were required under the Pennsylvania procedural rules to have given them notice of intent to enter judgment of *non pros* pursuant to Pa.R.C.P. 1042.6 and 1042.7.

At the outset, the court finds that the defendants can challenge the plaintiffs' alleged defective COM against the Camp in a motion to dismiss. *See* Bassill v. Bryn Mawr Rehab. Hosp., 2016 WL 6247549, *1 (E.D.Pa. Oct. 26, 2016) (Defendant hospitals filed a motion to dismiss plaintiff's corporate negligence claim for filing a defective COM and asserted that plaintiff's COM was insufficient to support that claim.); *see also* Stroud v. Abington Mem'l Hosp., 546 F. Supp. 2d 238, 248 (E.D.Pa. 2008). This court also takes judicial notice that it has considered motions to dismiss in many cases based on the

failure to file proper COMs as well as timely COMs. *See, eg.*, Levi v. Lappin, 2009 WL 1770146 (M.D.Pa. June 22, 2009); *see also* cases cited by defendants (Doc. 17, pp. 5-6).

Additionally, the court does not find any reason to wait for a summary judgment motion on the present issue since discovery will not alter the basis of defendants' stated contention seeking to dismiss plaintiffs' corporate negligence claims against the Camp due to a defective COM and the 60-day deadline to file COMs has expired. Also, plaintiffs already had the opportunity to amend their COM against the Camp and they did so. (Doc. 10, p. 25).

Further, defendants were not required to follow Pa.R.C.P. 1042.6 and 1042.7 by filing a notice of intent to enter judgment of *non pros*. As the court stated in Keel-Johnson v. Amsbaugh, 2009 WL 648970, at *3 (M.D.Pa. Mar. 10, 2009), "[n]ot all aspects of the Pennsylvania COM rule can be implemented in federal court[.]" In fact, Rules 1042.6 and 1042.7 are "enforcement mechanisms [which] are procedural and inapplicable to federal practice." Id. (citing Stroud v. Abington Mem. Hosp., 546 F. Supp. 2d 238, 250 (E.D. Pa. 2008)). Additionally, "[n]either the Federal Rules of Civil Procedure nor the local rules of this Court contemplate praecipes or the entry of judgments of *non pros*." Id. (citing Stroud, 546 F. Supp.2d at 250); Vochinsky v. GEO Group, Inc., 2009 WL 4017254, *2 (E.D.Pa. Nov. 20, 2009) ("Federal procedural rules differ from Pennsylvania procedural rules. Therefore, in federal court, the defendant must file a motion to dismiss without prejudice

[regarding a COM].”). In any event, plaintiffs had notice of defendants’ intent to move to dismiss based on an alleged defective COM against the Camp when they filed their first motion prior to plaintiffs’ amended complaint and amended COMs. (Doc. 9).

The court will now discuss the merits of defendants’ arguments and grounds for dismissal *seriatim*.

Defendants move to dismiss plaintiffs’ claims of direct corporate medical negligence against the Camp based on an alleged defective COM. “Rule 1042.3 of the Pennsylvania Rules of Civil Procedure requires that all professional liability claims be supported by a [COM] filed within sixty days of the filing of the complaint.” Bassill v. Bryn Mawr Rehab. Hosp., 2016 WL 6247549, \*1 (E.D.Pa. Oct. 26, 2016) (citing Pa.R.Civ.P. 1042.3(a)). Pennsylvania Rule of Civil Procedure 1042.3[2] further requires that, “[i]n any action based upon an allegation that a licensed professional deviated from an acceptable professional standard, the attorney for the plaintiff, or the plaintiff if not represented, shall file . . . a certificate of merit signed by the attorney or party.” Pa.R.C.P. No. 1042.3(a). This certificate of merit will either state that “an appropriate licensed professional has supplied a written statement that

---

[2]The Third Circuit has held that Rule 1042.3 is substantive law and must be applied by federal courts sitting in diversity jurisdiction. Liggon-Redding v. Estate of Sugarman, 659 F.3d 258, 264-65 (3d Cir. 2011) (“[W]e conclude that Pennsylvania Rule 1042.3, mandating a certificate of merit in professional negligence claims, is substantive law under the *Erie* Rule and must be applied as such by federal courts.”).

there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm," "the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard," or that "expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim." Pa.R.C.P. No. 1042.3(a)(1), (2), (3).

"In Rostock v. Anzalone, 904 A.2d 943, 946 (Pa.Super.Ct. 2006), the Pennsylvania Superior Court held that the plaintiff's corporate negligence claims required a COM and expert testimony." Bassill, 2016 WL 6247549, *2. In Stroud v. Abington Mem'l Hosp., 546 F. Supp. 2d 238, 248 (E.D.Pa. 2008), the court held that "[a] COM is required as to corporate negligence claims that are premised on allegations that a hospital's actions fell below the applicable medical or professional standard, i.e., where the claim is predicated upon facts constituting medical treatment." (citing Rostock, supra). It is clear that a COM is required for a plaintiff to pursue a corporate negligence claim against a licensed professional medical care provider such as a hospital. Plaintiffs contend that a COM is not required in this case with respect to the Camp since it is not a licensed professional medical care provider as specified in Pa.R.C.P. 1042.1 and that they can proceed on their direct

14

corporate liability claims against the Camp without expert testimony. Defendants dispute plaintiffs' contention that a COM is not required as to their direct corporate liability claims against the Camp. Defendants also dispute whether plaintiffs' COM is adequate with respect to such claims against the Camp.

Plaintiffs filed their amended complaint with the amended COM against the Camp since their original COM indicated that expert testimony of a licensed professional was not necessary for the prosecution of the claim against the Camp. (Doc. 1, p. 29). No doubt that the Camp is a corporate entity but not a licensed professional or a health care provider. (Doc. 12, ¶36). Plaintiffs' amended COM with respect to the Camp served to remedy the error in their original COM by indicating that they have an expert who opines only that the Camp is vicariously liable for the actions of its professionally licensed nurses, i.e., Lehman and Chou. *See* Pa.R.Civ.P. 1042.3(a)(2). Plaintiffs only checked the second box on their amended COM with respect to the Camp. (Doc. 10, p. 25). However, regarding their corporate direct medical negligence claims against the Camp seeking to hold the Camp directly liable for its own negligence, in addition to the alleged negligence of Lehman and Chou, defendants contend that plaintiffs must present expert evidence and a COM.

A separate COM is required for each licensed professional who is claimed to have deviated from an acceptable professional standard. Pa.R.C.P. 1042.3(b)(1). A "licensed professional" is defined as "any person

15

who is licensed pursuant to an Act of Assembly as a healthcare provider as defined by Section 503 of the Medical Care Availability and Reduction of Error (MCARE) Act . . . and a nurse." Pa. R.C.P. 1042.1. The MCARE Act, 40 P.S. §1303.503, defines a "heath care provider" as "a primary health care center, a personal care home licensed by [DPW] … or a person, including a corporation, university or other educational institution licensed or approved by the Commonwealth to provide health care or professional medical services as a physician, a certified nurse midwife, a podiatrist, hospital, nursing home, birth center, and an officer, employee or agent of any of them acting in the course or scope of employment."

Regardless whether the Camp is a licensed health care provider, a COM is required because the substance of plaintiffs' amended complaint alleges professional medical malpractice was committed by the Camp. Vochinsky, 2009 WL 4017254, *2 (court held that a COM was required by inmate who alleged GEO Group, Inc., a corporation which operated the Delaware County Prison, committed medical practice) (citing Dental Care Assoc., Inc. v. Keller Eng'rs, Inc., 954 A.2d 597, 601-03, 603 n. 4 (Pa.Super.Ct. 2008) ("the Superior Court [ ] found the defendant qualified as a licensed professional for purposes of Rule 1042 and a certificate of merit was required where the defendant was a 'corporation engaged in the business of providing engineering services' and the substance of plaintiff's complaint alleged professional malpractice.").

16

As such, the court finds that a COM is required as to the direct corporate medical negligence claims plaintiffs assert against the Camp even though it is not a licensed professional medical care provider since these claims are based on allegations that the Camp's actions fell below the applicable medical or professional standard, "i.e., where the claim is predicated upon facts constituting medical treatment." *See* Rostock, 904 A.2d at 946; Stroud, 546 F.Supp.2d at 248. Specifically, plaintiffs allege that the Camp failed to adequately train the infirmary medical staff, failed to have adequate policies and procedures in place regarding its medical facility to treat the campers, and failed to consult with a physician.

In fact, plaintiffs did file a COM against the Camp. However, the court finds that the amended COM against the Camp supports only a claim of vicarious liability and that it is insufficient to support a direct claim of corporate medical negligence. Plaintiffs did not check the first box on their amended COM against the Camp. *See* Pa.R.C.P. 1042.3(a)(1). Rather, they checked only the second box.

In Bassill, 2016 WL 6247549, *2, the court explained as follows,

> a claim for corporate negligence "is based on the negligent acts of the institution." Welsh v. Bulger, 698 A.2d 581, 585 (Pa. 1997). "A cause of action for corporate negligence arises from the policies, actions or inaction of the institution itself rather than the specific acts of individual hospital employees. Thus, under this theory, a corporation is held directly liable, as opposed to vicariously liable, for its own negligent acts." Id. (internal citations omitted).

17

Moreover, "[c]orporate negligence claims generally require expert testimony; therefore, they also require COMs." Id. In Count III of the amended complaint, plaintiffs raise claims of vicarious liability and claims of direct corporate medical negligence against the Camp with respect to the medical treatment received by GPG. The court does not find, as plaintiffs now seem to suggest, (Doc. 16, p. 12), that they are merely raising claims for ordinary negligence against the Camp. In particular, plaintiffs allege in their amended complaint, (Doc. 10), that the Camp controls an infirmary, employs full time medical staff, including Lehman and Chou, and that the Camp is responsible for such staff. Plaintiffs also allege that the Camp failed to have adequately trained medical staff, failed to have adequate medical policies and procedures in place, failed to have a doctor on staff, failed to meet its duty of providing medical and nursing care to campers, and failed to inform GPG's parents of his medical conditions. Additionally, plaintiffs allege that the Camp was negligent in failing to provide proper and competent supervision, diagnosis, treatment, care and monitoring. (Doc. 10, ¶ 48). Thus, plaintiffs seek, in part, to hold the Camp directly liable for its own medical negligence. "The case law makes it clear that in order to do so, [plaintiffs] would need to present expert evidence, and thus [a] supporting COM[], regarding the [Camp's] negligence, as separate from the alleged negligence of its employee[s] and/or agent[s]." Bassill, 2016 WL 6247549, *2.

Under Pennsylvania law, medical negligence "can be broadly defined

as the unwarranted departure from generally accepted standards of medical practice resulting in injury to a patient, including all liability-producing conduct arising from the rendition of professional medical services." Toogood v. Owen J. Rogal, D.D.S., P.C., 573 Pa. 245, 254-55 (2003) (internal citations and quotations omitted). Thus, a plaintiff must establish a duty owed by the physician or medical personnel to the patient, a breach of that duty, that the breach was the proximate cause of the plaintiff's injury, and that the damages suffered were a direct result of the harm. Toogood, 573 Pa. at 254-55. In addition, "[w]ith all but the most self-evident medical malpractice actions there is also the added requirement that the plaintiff must provide a medical expert who will testify as to the elements of duty, breach, and causation." Quinby v. Plumsteadville Family Practice, Inc., 589 Pa. 183, 199 (2006); *see also* Brady v. Urbas, 111 A.3d 1155, 1162 (Pa. 2015) ("Except in the most obvious cases of negligence (such as where a gauze pad is left inside a patient's body), expert testimony is necessary to establish the standard of care."); Rodriguez v. United States, 2009 WL 4480761 (M.D.Pa. Aug. 23, 2016), appeal pending, (This court held that in order for plaintiff inmate to establish a prima facie case of medical malpractice on behalf of the prison's medical personnel as well as on behalf of the Bureau of Prisons itself, the plaintiff inmate had to provide expert testimony to demonstrate both the standard of care owed to him, deviation from that standard, and causation.).

As defendants state in their reply brief, (Doc. 17, p. 7), "[b]ecause the

COM against the Camp fails to comply with Pa.R.C.P. 1042.3(a)(1), plaintiffs must be precluded from presenting expert testimony as to direct medical negligence against the Camp. If plaintiffs are precluded from presenting expert testimony against the Camp, they cannot establish a medical negligence claim against the Camp." *See Rodriguez, supra*; *Vochinsky, supra.* Indeed, the Bureau of Prisons in the *Rodriguez* case and the GEO Group in the *Vochinsky* case, like the Camp, are not licensed professional medical care providers but they all have medical facilities and medical staff under their supervision to treat the medical needs of the inmates and the campers.

Since the court has found that a COM is required with respect to plaintiffs' direct corporate medical negligence claims against the Camp, the court must decide if the failure of plaintiffs to file the requisite COM within the deadline, should result in the dismissal with prejudice of these claims. "In limited circumstances, a plaintiff's failure to file a timely certificate of merit may be excused." Bassill, 2016 WL 6247549, *3 (citing Womer v. Hilliker, 908 A.2d 269, 278–80 (Pa. 2006) ("holding that a failure to file a COM in compliance with the rules may be excused where there is substantial compliance, lack of prejudice and a reasonable explanation or legitimate excuse")). As in *Bassill*, the court finds no equitable exceptions apply in this case. The Rule's 60-day deadline has passed. *See* Pa.R.Civ.Proc. 1042.3(a) (plaintiff shall file the COM with the complaint or within sixty days after the filing of the complaint). Defendants made plaintiffs aware of the instant issue

challenging the original COM against the Camp in their first motion to dismiss and plaintiffs then filed their amended complaint, alleging that counsel erred in checking the wrong box on the original COM for the Camp and that an expert gave an opinion regarding the negligence of the Camp. (Doc. 10, ¶17.1). Plaintiffs also filed their amended COM against the Camp. Thus, insofar as Count III of plaintiffs' amended complaint raises direct corporate medical negligence claims against the Camp, such claims will be dismissed with prejudice since the deadline has passed and no equitable exceptions apply.

Defendants also seek to dismiss the claim of GPG's parents for loss of their child's consortium contained in Count V of the amended complaint. There is no dispute that under Pennsylvania law, a parent has no right to recover damages for the loss of a child's consortium. Recently, in Beam v. Western Wayne Sch. Dist., 165 F.Supp.3d 200, 217 (M.D.Pa. 2016), the court stated that "Pennsylvania, similar to federal law, does not recognize a cause of action for the loss of consortium of a child." (citing Quinn v. City of Pittsburgh, 243 Pa. 521, 524–25, 90 A. 353 (1914) (holding that a parent may not recover for the loss of a child's consortium because such a cause of action is confined to where a [spouse] sues for injuries to his[/her spouse]); Robinson v. Hartzell Propeller, Inc., 276 F.Supp.2d 412, 415 (E.D.Pa. 2003) ("dismissing claim for parental loss of consortium on grounds that the Pennsylvania Supreme Court most likely would not allow that cause of

21

action"). Accordingly, the parent plaintiffs' claim for loss of GPG's consortium contained in Count V of the amended complaint will be dismissed with prejudice.

Further, defendants argue that plaintiffs' allegations of negligence against the Camp staff, including Lehman and Chou, (Doc. 10, ¶ 35), should be stricken as vague and unsupported. The court finds that these allegations are sufficient for present purposes and state plausibly professional medical negligence claims against Lehman and Chou. Thus, defendants' motion to dismiss plaintiffs' allegations of negligence against all defendants will be denied.

Finally, defendants argue that all of the allegations for recklessness should be stricken from the amended complaint. The amended complaint contains various allegations of recklessness against all defendants which implies that plaintiffs will be seeking punitive damages. (*See, eg.*, Doc. 10, ¶'s 35-36). However, defendants point out that the amended complaint does not contain a separate claim for punitive damages and plaintiffs' prayer for relief does not request punitive damages. Defendants also state that even if plaintiffs are seeking punitive damages, they fail to meet their burden of pleading sufficient facts to support a claim for punitive damages.

Plaintiffs state that their allegations of recklessness are sufficient at this stage of the case, including their allegations that the Camp allowed GPG, who was a minor, "to wallow in pain and suffering for four days is sufficient to

support a claim for punitive damages." (Doc. 16, p. 20). Plaintiffs state that the statute of limitations for GPG to raise a claim of punitive damages will not expire for five years and that such damages "are not a separate claim but rather an element of damages which can be claimed at any stage." (Id.). Plaintiffs concede that they did not request punitive damages in their amended complaint but they suggest that they will seek leave of court to file a second amended complaint to assert a claim for punitive damages after discovery.

The remaining claims in this case include plaintiffs' claims for professional medical negligence against Lehman and Chou as well as their claim of vicarious liability against the Camp pertaining to the alleged negligence of Lehman and Chou, Counts I-III. "Reckless conduct is the factual characterization of the events that took place giving rise to the negligence action; it is not a claim in itself that the court can dismiss." Austin v. Nugent, 2016 WL 7048994, *7 (M.D.Pa. Dec. 5, 2016).

Defendants seek to dismiss all of plaintiffs' allegations of recklessness to avoid the imposition of punitive damages. "Punitive damages are merely an element of damages in a negligence action." Id. (citing Kirkbride v. Lisbon Contractors, Inc., 555 A.2d 800, 802 (Pa. 1989) ("[N]o independent action exists for a claim of punitive damages since punitive damages is only an *element* of damages") (emphasis in original)). "It follows that punitive damages are 'predicated upon the finding of liability.'" Id. (citing Kirkbride, 555

A.2d at 802).

As indicated, plaintiffs' amended complaint does not specifically seek punitive damages. As this court stated in the *Austin* case, 2016 WL 7048994, \*7, since defendants seek dismissal of an element of a claim that is not even demanded, there is nothing to dismiss at this stage.

Assuming *arguendo* that plaintiffs had demanded punitive damages, or as they imply, that they will later seek punitive damages, as this court pointed out in *Austin*, defendants misconstrue the standard under Rule 12(b)(6). Id. "The pleading standard set forth in *Twombly* solely requires that the plaintiff's claims be 'plausible,' not that they be proven in the complaint by sufficient facts as the defendant's motion would suggest. Id. (citing Twombly, 550 U.S. at 547). "In Pennsylvania, punitive damages are available as a remedy for negligence actions." Id. (citing Hutchinson ex rel. Hutchinson v. Luddy, 870 A.2d 766, 772–73 (Pa. 2005)). "This remedy is only available 'in cases where the defendant's actions are so outrageous as to demonstrate willful, wanton or reckless conduct.'" Id. (citing Hutchinson ex rel. Hutchinson, 870 A.2d at 770).

The court finds that the plaintiffs' allegations of reckless in their amended complaint would be enough to state a "plausible" claim for punitive damages under Pennsylvania law. Austin, 2016 WL 7048994, \*8 (citing Twombly, 550 U.S. at 547); *see also* Tucker v. Horn, Case No. 4:16-cv-0071, 2016 WL 4679018, at \*3–4 (M.D. Pa. Sept. 9, 2016). As this court instructed

in *Austin*, "Plaintiff[s] would certainly bear a high evidentiary burden if [they] decided to seek punitive damages, but this is the very purpose of discovery." Id. Further, "[d]iscovery would be necessary to determine whether the defendant's actions rose to the level of outrageous conduct warranting punitive damages." However, like in *Austin*, the issue of whether plaintiffs will be able to make the requisite evidentiary showing is not an issue that this court need address now. "Thus, even if the plaintiff[s] had sought punitive damages in [their] [amended] complaint, the allegations would be sufficient to survive a motion to dismiss as dismissal at this early stage would be premature." Id.

Moreover, in the November 30, 2016 revised scheduling order, the court set June 2, 2017 as the deadline for fact discovery and the final date for the amendment of pleadings is June 15, 2017. (Doc. 21). Since these dates have not yet passed, the court will allow the plaintiffs' allegations of recklessness in their amended complaint to proceed. Accordingly, defendants' motion to dismiss all of plaintiffs' allegations of recklessness will be denied.

## IV.    CONCLUSION

For the reasons discussed above, the defendants' motion to dismiss, (Doc. 12), the plaintiffs' amended complaint, (Doc. 10), will be **GRANTED IN PART AND DENIED IN PART**. A separate order shall issue.



s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: May 4, 2017**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2016 MEMORANDA\16-1521-01.wpd