**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| GORDON PARKER GOODFELLOW: IV, a minor by GORDON PARKER GOODFELLOW, III and LORENA GOODFELLOW, Parents and Natural Guardians and GORDON PARKER GOODFELLOW, III and LORENA GOODFELLOW, Individually, | CIVIL ACTION NO. 3:16-1521 (JUDGE MANNION) |
| Plaintiffs | |
| v. | |
| SHOHOLA, INC., d/b/a CAMP SHOHOLA FOR BOYS, INC., CANDACE KAY LEHMAN and LISA M. CHOU (BRASS), | |
| Defendants | |

**MEMORANDUM**

On May 4, 2017, the court issued a Memorandum and Order, (Docs. 25-26), granting in part, and denying in part, the defendants' motion to dismiss, (Doc. 12), the plaintiffs' amended complaint, (Doc. 10). *See* 2017 WL 1738398 (M.D.Pa. May 4, 2017). In its Order, the court dismissed with prejudice the plaintiffs' direct corporate medical negligence claims against Camp Netimus, Inc., d/b/a Camp Shohola for Boys, Inc. ("the Camp")[1] contained in Count III of the amended complaint based on a defective Certificate of Merit ("COM") which failed to set forth that the plaintiffs were

---

[1] After the court's May 4, 2017 Memorandum, the parties amended the caption to reflect that the corporate defendant was Shohola, Inc., d/b/a/ Camp Shohola for Boys, Inc.

proceeding on such a theory against the Camp. The plaintiffs then filed a second amended complaint containing two COMs against the Camp, one under Pa.R.C.P. 1042.3(a)(1) and one under Pa.R.C.P. 1042.3(a)(2). The plaintiffs also added claims for punitive damages for the first time. The defendants now move to dismiss the plaintiffs' second amended complaint with respect to their corporate/direct negligence claims against the Camp and, with respect to all of their claims for punitive damages. For the reasons discussed below, the defendants' motion will be **GRANTED IN PART** and **DENIED IN PART**.

I. **PROCEDURAL AND FACTUAL BACKGROUND**[2]

The plaintiffs, Gordon Parker Goodfellow, III, and Lorena Goodfellow bring this action on behalf of their minor son, Gordon Parker Goodfellow, IV ("GPG"), and on their own behalf. The plaintiffs filed their original complaint on July 22, 2016, (Doc. 1), against defendants the Camp, and the two Camp infirmary nurses, Candace Kay Lehman and Lisa M. Chou. On September 23, 2016, defendants filed a motion to dismiss the original complaint arguing, in part, that the COM regarding the Camp was defective. (Doc. 9). On September 30, 2016, plaintiffs filed an amended complaint. (Doc. 10). The only difference between the amended complaint and the original complaint was ¶17.1 which stated that counsel erred in checking the wrong box on the

---

[2]Since the background of this case is detailed in the court's May 4, 2017 Memorandum, it shall not be fully repeated herein.

original COM for the Camp and that plaintiffs had secured an expert who gave an opinion regarding the negligence of the Camp. The amended COM for the Camp had the box for vicarious liability checked. (Doc. 10, pp. 24-25).

In their amended complaint, (Doc. 10), the plaintiffs asserted claims of direct and corporate negligence against the Camp, including claims that it failed to adequately train the infirmary staff, it failed to have adequate policies and procedures in place, and it failed to consult with a physician. Specifically, in Count III, the plaintiffs raised claims of vicarious liability as well as direct corporate medical negligence claims against the Camp.

The amended COM filed against the Camp, which was based only on Pa.R.C.P. 1042.3(a)(2), stated that "the claim that this defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals [i.e.,Lehman and Chou] for whom this defendant is responsible deviated from an acceptable professional standard" and, that an expert has found "there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work [at issue], fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm [to GPG]."

On May 4, 2017, the court issued a Memorandum and Order, (Docs. 25-26), and granted the defendants' motion to dismiss the plaintiffs' direct corporate medical negligence claims against the Camp in their amended complaint and it dismissed these claims with prejudice. The court also allowed

3

the plaintiffs' allegations of recklessness in their amended complaint to proceed.

The plaintiffs then filed a motion for reconsideration regarding the court's May 4, 2017 Memorandum and Order. (Doc. 28). After the plaintiffs' motion was fully briefed, the plaintiffs filed a second amended complaint ("SAC") on December 15, 2017. (Doc. 45). The defendants filed a motion to dismiss plaintiffs' SAC on January 8, 2018. (Doc. 49). The defendants' motion was then fully briefed.[3]

On July 20, 2018, the court denied the plaintiffs' motion for reconsideration of its May 4, 2017 Memorandum and Order. (Docs. 61 & 62).

The defendants' motion to dismiss plaintiffs' SAC will now be addressed in this memorandum.[4]

## II. DISCUSSION

The defendants argue that the plaintiffs' SAC now contains two COMs against the Camp, one based upon Pa.R.C.P. 1042.3(a)(1) and one based upon Pa.R.C.P. 1042.3(a)(2), and that this is not proper since the plaintiffs'

---

[3]The plaintiffs filed a response to the defendants' motion to dismiss as well as a brief in opposition to the motion. (Docs. 54 & 56). However, in federal court, answers to motions are not utilized, rather only briefs in opposition are required. Thus, the plaintiffs' answer to the motion is not considered.

[4]Since the Rule 12(b)(6) motion to dismiss standard was stated in the court's May 4, 2017 Memorandum and since it is stated in the present briefs of the parties, it shall not be repeated herein.

4

amended complaint only contained one COM against the Camp under Pa.R.C.P. 1042.3(a)(2), and since the court dismissed plaintiffs' direct corporate negligence claims against the Camp with prejudice in its May 4, 2017 Memorandum and Order. Further, the defendants contend that the plaintiffs' December 15, 2017 COM, filed pursuant to Pa.R.C.P. 1042.3(a)(1), is untimely. The defendants also seeks to dismiss the plaintiffs' claims in their SAC for punitive damages arguing that even though the plaintiffs alleged reckless conduct in their amended complaint, they failed to include any claim for punitive damages in their prior pleading.

The court will first address the plaintiffs' claims for punitive damages in their SAC.

**1. Claims for Punitive Damages**

In Counts I-IV of their SAC, the plaintiffs specifically request punitive damages as part of their prayers for relief. The claims are made by the two adult plaintiffs on behalf of the minor plaintiff (GPG) and on their own individual behalf.

Initially, the court in its May 4, 2017 Memorandum allowed the plaintiffs' allegations of recklessness in their amended complaint to proceed and denied the defendants' motion to dismiss all of plaintiffs' allegations of recklessness in the stated pleading. Since the court stated the standard for a punitive damages claim under Pennsylvania law in its prior memorandum, it incorporates this standard herein by reference. *See also* Stroud v. Abington Mem. Hosp., 546 F.Supp.2d 238, 257 (E.D.Pa. 2008); Hutchison ex. rel.

Hutchison v. Luddy, 582 Pa. 114, 870 A.2d 766, 771-72 (2005); Dubose v. Quinlan, 125 A.3d 1231 (Pa.Super. 2015).

The court has reviewed the plaintiffs' SAC and finds that its allegations suffice to plead plausible claims for punitive damages in Counts I-IV. *See* Stroud, 546 F.Supp.2d at 257 (Court held that "provided the plaintiff demonstrates that the defendant acted with at least a mental state of recklessness (conscious disregard), punitive damages may be recovered on a claim sounding in negligence.").

Next, defendants argue that the punitive damages claims brought by the two adult plaintiffs individually in all four Counts must be dismissed as time-barred. Defendants state that since the adult plaintiffs did not assert any claim for punitive damages until they filed their SAC on December 15, 2017, such claims are barred by the 2-year statute of limitations applicable to them. No doubt that the statute of limitations for the minor plaintiff (GPG) to raise punitive damages claims has not expired since it is tolled until he turns 18 years old. *See* 42 Pa.C.S. §5533.

Since the court has diversity jurisdiction over this case, it applies Pennsylvania substantive law. *See* Kaneff v. Delaware Title Loans, Inc., 587 F.3d 616 (3d Cir. 2009). Further, "[f]ederal courts sitting in diversity treat statutes of limitations as substantive, and therefore are bound by the applicable state law." Estate of Goldberg ex rel. Goldberg v. Nimoityn, 2014 WL 6908013, *6 (E.D.Pa. Dec. 9, 2014) (citing Jaworowski v. Ciasulli, 490 F.3d 331, 333 (3d Cir. 2007). In Pennsylvania, a two-year statute of limitations

6

applies to a claim for punitive damages. *See* Romah v. Hygienic Sanitation Co., 705 A.2d 841 (Pa.Super. 1997). Defendants argue that since the two-year statute of limitations has run with respect to the adult plaintiffs' claims for punitive damages, they can not now amend their complaint to seek the recovery of punitive damages. Defendants also contend that since the two-year statute of limitations applies to the adult plaintiffs' individual claims for punitive damages contained in Counts I-IV, they do not get the benefit of the tolling statute applicable to minors for their own individual claims. Thus, defendants state that since the adult plaintiffs failed to timely raise their punitive damages claims within the two-year statute of limitations, their individual claims for punitive damages in Counts I-IV should be dismissed with prejudice.

As plaintiffs recognize, if a timely filed complaint does not contain a specific demand for punitive damages, the plaintiff can subsequently amend his complaint to include a claim for punitive damages when his original complaint contained allegations of deliberate and willful conduct. *See* Shanks v. Alderson, 399 Pa.Super. 485, 491, 582 A.2d 883, 886 (1990), app. denied, 528 Pa. 638, 598 A.2d 994 (1991).

The court finds that since the plaintiffs' original and amended complaints contained allegations which were sufficient to state plausible claims for punitive damages under Pennsylvania law, the plaintiffs can file their SAC and timely include individual claims for punitive damages by the adult plaintiffs. *See Shanks, supra*.

7

Thus, defendants' motion to dismiss the punitive damages claims brought by the two adult plaintiffs individually in Counts I-IV as time-barred will be denied.

Defendants also state that since plaintiffs' direct corporate negligence claims against the Camp in their SAC should be dismissed, only their vicarious liability claims remain against the Camp. As such, defendants argue that the plaintiffs' claims for punitive damages against the Camp based on vicarious liability should be dismissed. "Pennsylvania's Medical Care Availability and Reduction of Error Act provides that punitive damages may be awarded against a health care provider 'for conduct that is the result of the health care provider's willful or wanton conduct or reckless indifference to the rights of others.'" Goldberg, 2014 WL 6908013, *10 (citing 40 P.S. §1303.505(a)). Defendants state, "[p]unitive damages shall not be awarded against a health care provider who is only vicariously liable for the actions of its agent that caused the injury unless it can be shown by a preponderance of the evidence that the party knew of and allowed the conduct by its agent that resulted in the award of punitive damages." (Doc. 53 at 14-15) (citing 40 P.S. §1303.505(a)-(c); Stroud v. Abington Mem. Hosp., 546 F. Supp. 2d 238 (E.D. Pa. 2008)).

The court finds, as the plaintiffs summarize in their brief, (Doc. 56 at 22-23), that the plaintiffs have sufficiently alleged in their SAC that the Camp was aware of conduct by its agent, Lehman and Chou, that was willful, wanton or recklessly indifferent to the treatment of GPG and, that the Camp allowed this

8

conduct to continue. Thus, the plaintiffs will be allowed to proceed with their claims for punitive damages against the Camp based on vicarious liability in Counts III & IV.

## 2. Corporate/Direct Negligence Claims Against the Camp

In their SAC, the plaintiffs raise claims of direct corporate negligence against the Camp as well as claims that the Camp is vicariously liable for the alleged negligence of Lehman and Chou, Counts III & IV. Attached to the SAC is a COM, filed pursuant to Rule 1042.3(a)(1), in which plaintiffs' counsel certifies that a licensed professional has provided a written statement that "the care, skill or knowledge exercised or exhibited by [the Camp] in the treatment, practice or work that is the subject of the [SAC], fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm." (Doc. 45 at 35-36).

In Simmons v. Simpson House, Inc., 224 F.Supp.3d 406, 413 (E.D.Pa. 2016), the court explained negligence claims under vicarious liability and direct liability, and stated:

> "To prove negligence, a plaintiff may proceed against a defendant on theories of direct and vicarious liability, asserted either concomitantly or alternatively." Scampone v. Highland Park Care Ctr., LLC, 618 Pa. 363, 57 A.3d 582, 597 (2012). "Liability for negligent injury is direct when the plaintiff seeks to hold the defendant responsible for harm the defendant caused by the breach of a duty owing directly to the plaintiff." Id. Vicarious liability "is a policy-based allocation of risk" that holds one party liable for the actions of another due to a preexisting relationship between the two parties. Id. (citing Crowell v. City of Philadelphia, 531 Pa. 400, 613 A.2d 1178, 1181 (1992)). It is true, however, that "[w]here a corporation is concerned, the ready distinction

9

between direct and vicarious liability is somewhat obscured because we accept the general premise that the corporation acts through its officers, employees, and other agents." Id. (citing Tayar v. Camelback Ski Corp., Inc., 616 Pa. 385, 47 A.3d 1190, 1196 (2012)).

The court has previously dismissed the plaintiffs' direct corporate negligence claims against the Camp with prejudice in its May 4, 2017 Memorandum. The court then denied the plaintiffs' motion for reconsideration regarding these claims. As such, in their brief, (Doc. 53 at 7), defendants state that:

> Despite the fact that plaintiffs' Amended Complaint contained a COM satisfying only Pa.R.C.P. 1042.3(a)(2), plaintiffs now, on December 15, 2017, for the first time, submit [with their SAC] another COM against the Camp checking the box for Pa.R.C.P. 1042.3(a)(1), as well. [See Doc. 45 at 35-36] Plaintiffs improperly attempt to satisfy Pa.R.C.P. 1042.3(a)(1), and raise corporate/direct negligence claims pursuant to Rule 1042.3(a)(1) against the Camp, over 1.5 years after the inception of this action. Such attempt is a blatant violation of Rule 1042.3 as well as this Court's May 4, 2017 Order.

Defendants then state that "[b]ased on plaintiffs' failure to timely file a COM that complied with Pa.R.C.P. 1042.3(a)(1), this Court has already dismissed plaintiffs' corporate/direct negligence claims against the Camp." Thus, defendants state that since "plaintiffs never, at any point prior to December 15, 2017, submitted a COM satisfying Rule 1042.3(a)(1)", "[t]he 60-day requirement for Rule 1042.3 has passed well over 1 year ago." (Id. at 8). Defendants conclude that plaintiffs' direct corporate negligence claims against the Camp should again be dismissed with prejudice, that plaintiffs' COM against the Camp should be stricken, and that plaintiffs should be

precluded from offering any expert testimony of direct corporate negligence at trial against the Camp.

The plaintiffs state that they assert direct corporate liability claims against the Camp in their SAC by alleging that GPG was caused injuries by the "Camp's recklessness in failing to supervise and train and monitor Camp employees." They state that in their SAC they "allege the Camp had *in loco parentis* duties with direct control over care of campers, advertised a 24-hour on-call Physician with 2 full time on-site Nurses and a 6 bed Infirmary, and the Camp director received nightly updates of care", and that "despite all that the Camp failed to uphold proper standards of care." Plaintiffs argue that they can assert direct corporate liability claims against the Camp even though it is not a hospital since it held itself out as providing health care services to campers. Plaintiffs state that "[h]ere there is no dispute that the Camp held itself out as providing healthcare to its campers (physician, nurses, 6 bed infirmary) and failed to uphold those standards" and, that "[e]ven though the Camp denies it is a healthcare provider and is otherwise not listed as a professional for whom a COM is required, [ ], the Camp may nonetheless be held directly liable under the circumstances averred in the [SAC]."

There is no question that the plaintiffs' direct corporate liability claim against the Camp was previously dismissed by the court with prejudice. Nor does the court find any dispute that the COM attached to the SAC under 1042.3(a)(1), which was filed for first time on December 15, 2017, was well beyond the 60-day time limit. Thus, the court bases its present decision in

11

granting the defendants' motion to dismiss the direct corporate liability claims against the Camp raised in the SAC on the above stated undisputed facts.

Moreover, the court finds merit to the contention that the Camp is not the type of entity that can be held liable under the doctrine of corporate liability under Pennsylvania law and, that this claim against the Camp fails as a matter of law.

In Simmons, 224 F.Supp.3d at 415, the court addressed direct negligence claims against a corporation, "also known as corporate liability", and stated that "[i]n contrast to a hospital's potential vicarious liability for its employees' actions, a cause of action for corporate liability 'is independent of the negligence of the hospital's employees or ostensible agents' and 'arises from the polices, actions or inaction of the institution itself.'" (citations omitted). "Thus, under this theory, a corporation is held directly liable, as opposed to vicariously liable, for its own negligent acts." Id. (citations omitted).

The court in *Simmons, id.*, then explained the doctrine of corporate negligence and stated:

> The doctrine of corporate negligence is not limited to hospitals. In Scampone v. Highland Park Care Ctr., LLC, 618 Pa. 363, 57 A.3d 582, 606–07 (2012), the Pennsylvania Supreme Court explained that to determine whether an entity is liable under a corporate negligence theory, the proper question is whether the plaintiff "offer[s] sufficient evidence of the relationship with [the defendant] ... to establish that duties of care exist." Id. at 606. In order to determine whether an entity is subject to corporate negligence liability, a court should not ask whether "the entity is a hospital or like a hospital, but rather whether a duty of care exists between the entity and the injured person." Murzynski v. Erie County, No. 1:15–cv–00195, 2016 WL 5872430, at *7 (W.D. Pa. Oct. 7, 2016)

12

(citing Scampone, 57 A.3d at 606). Courts must determine this by applying Section 323 of the Restatement (Second) of Torts or the factors established in Althaus v. Cohen, 562 Pa. 547, 756 A.2d 1166 (2000). *See* Scampone, 57 A.3d at 606. The Third Circuit has noted that Section 323 is "particularly relevant ... where a party undertakes a task and possibly fosters reliance by the plaintiff on his efforts." Spence v. ESAB Grp., Inc., 623 F.3d 212, 217 (3d Cir. 2010) (quotation omitted).

In *Simmons*, the defendant corporation, Simpson House, Inc., was a nursing home. The court in Simmons, *id*. at 416, allowed the plaintiff to proceed with the direct corporate negligence claim against the Simpson House since the plaintiff alleged that it was "responsible for the total health care of [Ola] while she was a resident," and "that Ola was 'totally dependent upon [the] staff for her mental, physical, psycho-social and medical needs.'" The *Simmons* court cited to Scampone, 57 A.3d at 584, and its holding that "a nursing home ... [is] subject to potential direct liability for negligence, where the requisite resident-entity relationship exists to establish that the entity owes the resident a duty of care." Id.

Defendants argue that the Camp is not the type of entity that can be held liable on a corporate negligence claim. They rely, in part, upon Brink v. Mallik, Nos. 13-cv-1314 and 13-cv-2875 (C.P. Lacka. Co. 6-30- 16) (Nealon, J.), in which they state "the court found that corporate negligence applies only to hospitals, health maintenance organizations, nursing homes, and professional medical corporations. (*See* Doc. 53-3). They also stated that, "the Court in *Brink*, *id.* at *17, held that a primary care facility could not be liable for corporate negligence since the facility 'cannot be considered a

13

comprehensive health care center such as a hospital, nor can it be construed to play a central role in the 'total health care of its subscribers.'"

Recently, in McClure v. Parvis, 294 F.Supp.3d 318, 326 (E.D.Pa. 2018), the court addressed the doctrine of corporate liability under Pennsylvania law in a case in which the doctrine was asserted by a patient against her primary care physician's office. The court in *McClure, id.*, stated that "[u]nder Pennsylvania law, a hospital has a non-delegable duty to adhere to the proper standard of care to ensure the patient's safety and well-being" and, that "[t]he hospital's duty is independent of any third party's duty." (citations omitted). Thus, the court stated that "corporate negligence does not depend on establishing a third party's negligence", and that "a hospital may be liable if it deviates from the standard of care it owes its patient." Id. (citations omitted).

The court in *McClure, id.* at 326-27, then discussed the four categories of non-delegable duties, which are: "(1) a duty to use reasonable care in the maintenance of safe and adequate facilities and equipment; (2) a duty to select and retain only competent physicians; (3) a duty to oversee all persons who practice medicine within its organization as to patient care; and (4) a duty to formulate, adopt, and enforce adequate rules and policies to ensure quality care for its patients." (Internal citations omitted). The court stated that "[a] hospital may be liable if it breaches any of these duties." Id.

The court in *McClure, id.* at 327, further stated, "[t]o state a claim for corporate negligence, the plaintiff must allege that the medical entity breached one of the four non-delegable duties, the medical entity had actual

14

or constructive knowledge 'of the defect or procedures which created the harm,' and the breach caused the patient substantial harm." (citations omitted).

> Thus,
>
> Liability for corporate negligence is not based on respondeat superior. It arises from the medical entity's own acts or omissions. The focus is not on what the employee did or did not do, but rather on what the employer did or did not do. A claim for corporate negligence "arises from the policies, actions or inaction of the institution itself rather than the specific acts of individual hospital employees." Unlike vicarious liability, corporate liability requires that the defendant had notice of the conduct at issue by virtue of its own misfeasance or nonfeasance—"that the hospital knew or should have known about the breach of duty that is harming its patients."

*McClure, id.* (internal citations omitted).

The *McClure* court then recognized that "the corporate negligence doctrine has been applied to certain non-hospital entities" such as an HMO, "a professional corporation of doctors with various specialties providing comprehensive care", and "a nursing home and the management company overseeing patient care at the nursing home." Id. (citations omitted). However, the court noted that "[c]orporate liability has not been extended to a physician's office because the office does not perform the role of a 'comprehensive health center with responsibility for arranging and coordinating the total health of its patients.'" Id. (citation omitted).

Nonetheless, in *McClure*, the court found that the plaintiff-patient could assert a direct corporate negligence claim against Penn Valley Medicine Unionville, which was her primary care physician's office, i.e., a physician

15

practice group. The court recognized that even though the Pennsylvania Superior Court in *Sutherland* "declined to find a physician's corporate practice liable for corporate negligence", "[s]ubsequent to *Sutherland*, the test for corporate liability was clarified to stress that the key is the relationship between the plaintiff-patient and the corporate defendant", and that "[t]he focus must be on whether a duty of care arises from the nature of the relationship between the parties." Id. at 328 (internal citations omitted). The court in *McClure*, *id*., stated that "[t]o determine whether the relationship between the defendant-corporation and the plaintiff-patient gives rise to a duty of care, we apply Section 323 of the Restatement (Second) of Torts." The court found that §323 "applies where the defendant contractually agreed to oversee and provide proper medical care."

After applying §323, the court in *McClure* found that the plaintiff's primary care physician's office at Unionville owed a non-delegable duty directly to plaintiff-patient to ensure her quality medical care and, that it was responsible for providing such care to her.

The court in the instant case has not found a case in which the Pennsylvania doctrine of corporate liability was applied to an overnight camp, such as our defendant Camp. The court declines to extend the doctrine of corporate liability under Pennsylvania law to the Camp based on the state appellate court decisions discussing this doctrine and based on the court's application of §323 to the facts herein. In short, GPG was not a patient of the Camp, he was a camper, and the nature of the relationship between the

16

parties was not a patient-provider relationship as in the *Simmons* and the *McClure* cases. Thus, as defendants conclude, (Doc. 53 at 11), in their brief:

> It is apparent that *Thompson* and its progeny apply to an institution, and certainly do not extend to overnight camps. As the Camp is a non-hospital, non-nursing home, non-HMO, non-prison, and non-health-care-services vendor, plaintiffs' corporate negligence claims against it must be dismissed with prejudice because the corporate-negligence doctrine does not apply to the Camp.

Additionally, the plaintiffs re-argue that they were not required to provide a COM against the Camp because it is not a healthcare provider. Regardless of the COM requirement, the court finds that the plaintiffs' direct corporate negligence claims must be dismissed since they are not cognizable under Pennsylvania law against the Camp. The plaintiffs however can certainly proceed with their claims against the Camp based on a vicarious liability theory.[5]

## IV. CONCLUSION

For the reasons discussed above, the defendants' motion to dismiss, (Doc. 49), the plaintiffs' second amended complaint, (Doc. 45), with respect to their direct corporate negligence claims against the Camp will be

---

[5]"Under a vicarious liability theory, the corporation is deemed to have assumed the risk of its individual agents' negligence; thus, 'an employer is held vicariously liable for the negligent acts of his employee which cause injuries to a third party, provided that such acts were committed during the course of and within the scope of the employment.'" Simmons v. Simpson House, Inc., 224 F.Supp.3d 406, 413-14 (E.D.Pa. 2016) (citations omitted).

17

**GRANTED**, and the defendants' motion to dismiss the plaintiffs' claims for punitive damages will be **DENIED**. A separate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: August 21, 2018**
O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2016 MEMORANDA\16-1521-03.wpd